UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**VOLVO FINANCIAL SERVICES, a DIVISION OF**
**VFS US LLC**                                                                    **PLAINTIFF**

**v.**                                                              **Civil Action No. 3:23-cv-244-JMV**

**BRADLEY KARL LITTLE, ET AL.**                                          **DEFENDANTS**

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on the motion of Plaintiff, Volvo Financial Services, a division of VFS US LLC ("Volvo Financial"), seeking summary judgment [Dkt. #19], 1) against each of the Defendants, Bradley Karl Little and Karl Kenard Little (collectively, the "Defendants"), jointly and severally, as to all claims asserted in its *Verified Complaint for Breach of Contract (Guaranty Agreement)* [Dkt. #1] (the "Verified Complaint"), and 2) in favor of Volvo Financial as against all claims, causes of action, or other requests for relief, if any,[1] asserted by Defendants against Volvo Financial in *Defendants Pro Se Argument Regarding Verified Complaint for Breach of Contract (Guaranty Agreement)* [Dkt. #9] (the "Answer"), including but not limited to dismissal with prejudice of all claims regarding alleged "defects" in the tractor units involved in this litigation. After the Court provided separate notice to Defendants on the docket of the pending motion for summary judgment, and of their opportunity to respond in opposition thereto,[2] Defendants have now done so, and the matter is ripe for decision. For the reasons set forth by Plaintiff in its memorandum in support of motion for summary judgment, [Dkt. #20], and as

---

[1] Volvo Financial asserts that it interprets certain portions of *Defendants Pro Se Argument Regarding Verified Complaint for Breach of Contract* [Dkt. #9] - particularly that portion denominated as section "V. Conclusion" – as potentially a counterclaim seeking recovery from Volvo Financial. Without waiving any objection to the sufficiency of Defendants' pleading or otherwise, Volvo Financial has, despite this reservation, timely [Dkt. #12] filed an answer to the pleading and now seeks summary judgment in its favor on such claims.
[2] *See* [Dkt. #21].

discussed below, the Court finds that the motion for summary judgment [Dkt. #19] should be granted.

## **<u>BACKGROUND</u>**

By way of background, this is a debt collection action against individual Defendants who personally guaranteed the payment of monetary obligations owed by a corporate entity, Truck Dynasty Transportation Incorporated ("Truck Dynasty"), to Volvo Financial. Truck Dynasty is/was, at all times relevant herein, a trucking company based in Olive Branch, Mississippi, of which Defendants are the principals, and believed to be its sole owners. Truck Dynasty is not a party to this action.

By this action, Volvo Financial seeks a final judgment against the Defendants, jointly severally, in the amount of $283,410.94, with said amount representing outstanding and unpaid monetary obligations that Volvo Financial asserts are contractually owed by Defendants to it, by virtue of a personal guaranty agreement provided to Volvo Financial as part of the consideration for its financing of Truck Dynasty's purchase of six (6) "Volvo" tractor units through a series of transactions in 2022 from M & K Truck Center of Sterling Heights, LLC ("M & K Truck Center" or "Dealership"), a truck dealership located Sterling Heights, Michigan. M & K Truck Center, like Truck Dynasty, is not a party to this action. All of the purchased tractor units were manufactured by Volvo Trucks North America, a division of Volvo Group North America, LLC ("Volvo Trucks" or "Manufacturer"). Volvo Trucks is not a party to this action.

There is no dispute as to the existence of monetary payment defaults in the underlying Truck Dynasty tractor purchase financing transaction, as Defendants have admitted in their Answer [Dkt. #9] that Truck Dynasty failed to tender monetary payments owed to Volvo Financial.

In particular, as described by Volvo, in early 2023 Truck Dynasty was in financial distress, resulting in, as described by Defendants, it making the "decision not to pay Volvo" and that it "refrained from making payments" owed to Volvo Financial. (Answer [Dkt. #9], at ¶¶ 3-4). Defendants characterize Truck Dynasty's decision not to pay Volvo Financial as a "strategic move" made "under the guidance of legal counsel." (Answer [Dkt. #9], at ¶¶ 3-4). Truck Dynasty eventually sought Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Mississippi; Case Number 23-11142-JDW, but was unsuccessful in its reorganizational efforts, resulting in its bankruptcy case being dismissed in October 2023.[3]

In connection with the dismissal, Truck Dynasty abandoned all six (6) of the tractor units to Volvo Financial. Volvo Financial thereafter disposed of the tractor units pursuant to its rights as a secured party under the Uniform Commercial Code, with such disposition resulting in (net of expenses) $838,630.75 in sale proceeds. The amounts Volvo Financial seeks to be awarded in this action reflect Defendants receiving credit for the net sale proceeds, leaving Defendant's guaranty obligations due in the amount of $283,410.94.

This action followed the normal procedural route, including a standard designated period of time for the parties to amend the pleadings, join parties, designate experts and conduct discovery. The docket reflects that no motions to amend or join parties were filed and no discovery was propounded. Dispositive motions, if any, were due by August 26, 2024. Volvo Financial alone filed such a motion, the instant summary judgment motion [Dkt. #19].

---

[3] On April 14, 2023, Truck Dynasty filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Mississippi; Case Number 23-11142-JDW (the "Truck Dynasty Bankruptcy Case"), but the Truck Dynasty Bankruptcy Case was dismissed on October 19, 2023 [Bkr. Dkt. #102]. Volvo Financial has represented it is unaware of any further bankruptcy filing by or on behalf of Truck Dynasty and neither Defendant has contended otherwise. Moreover, the court understands that no party to this action is or was at a relevant time herein a party to any bankruptcy filing. However, if for any reason this information is believed to be incorrect, counsel or the parties are to notify the undersigned immediately.

What follows below are descriptions of each of the aforementioned financing transactions ultimately giving rise to the amounts Volvo Financial alleges are due from the Defendants in this action on the Guaranty.

**THE FINANCING TRANSACTIONS AND DEFAULT, AS DETAILED IN THE VERIFIED COMPLAINT AND THE MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**A.     Schedule 002 Transaction.**

On or about November 1, 2022, Truck Dynasty purchased two (2) year-model 2023 Volvo VNL64T760 tractor units, VIN 4V4NC9EJ9PN619765 and VIN 4V4NC9EJ0PN619766 (collectively, the "Schedule 002 Tractor Units") from M & K Truck Center (the "Schedule 002 Transaction"). As reflected by notations found on the *Certificates of Title* for the Schedule 002 Tractor Units (Exhibit 4, *infra*) both of these tractors were new units when sold to Truck Dynasty.

Financing for the Schedule 002 Transaction is evidenced by that certain *Credit Sales Contract (Security Agreement)*, dated as of November 1, 2022, executed by Truck Dynasty in favor of the Dealership. (the "Schedule 002 Sales Contract"). A true and correct copy of the Schedule 002 Sales Contract was attached to the Plaintiff's Complaint as Exhibit A and to its Motion for Summary Judgment as Exhibit 1. Evidencing Truck Dynasty's authority to enter into the Schedule 002 Sales Contract and related contracts is that certain *Certificate of Authority (Execution of all Customer Documents)*, dated November 1, 2022 (the "Certificate of Authority"). The Certificate of Authority was executed on behalf of Truck Dynasty by each of the Defendants, Karl Little and Bradley Little. A true and correct copy of the Certificate of Authority was attached to the Motion for Summary Judgment as Exhibit 2.

**Schedule 002 Collateral.**

To secure Truck Dynasty's repayment obligations existing pursuant to the Schedule 002 Sales Contract, Truck Dynasty granted the Dealership a purchase money security interest in the Schedule 002 Tractor Units, together with all parts, accessories, attachments, substitutions, repairs, improvements, replacements and all proceeds thereof (collectively, the "Schedule 002 Collateral"). Pursuant to that certain *Assignment (Credit Sales Contract)*, dated November 1, 2022 (the "Schedule 002 Assignment"), the Dealership assigned all of its rights and interests in and to the Schedule 002 Sales Contract to Volvo Financial. A true and correct copy of the Schedule 002 Assignment was attached to the Motion as Exhibit 3.

Thereafter, Volvo Financial perfected its (as acquired via assignment from the Dealership) purchase money security interests in the Schedule 002 Tractor Units via first lienholder notations found on those certain State of Mississippi motor vehicle *Certificates of Title* numbers MS0007817472 and MS1081559296 (collectively, the "Schedule 002 Title Certificates"). True and correct copies of the Schedule 002 Title Certificates were attached to the Motion for Summary Judgment, collectively, as Exhibit 4.

**B.    Schedule 003 Transaction.**

On or about January 5, 2023, Truck Dynasty purchased one (1) year-model 2023 Volvo VNL64T760 tractor unit, VIN 4V4NC9EJ2PN619767 (the "Schedule 003 Tractor Unit") from M & K Truck Center (the "Schedule 003 Transaction"). Attached to Volvo Financial's Motion for Summary Judgment as Exhibit 5 was the *Equipment Purchase Agreement* (the "Schedule 003 Equipment Purchase Agreement"), reflecting Truck Dynasty's purchase of the Schedule 003 Tractor Unit from M & K Truck Center, with same reflecting both of the tractors as being as "new" at the time of sale.

Financing for the Schedule 003 Transaction is evidenced by that certain *Secured Promissory Note*, dated as of January 5, 2023, executed by Truck Dynasty in favor of Volvo Financial (the "Schedule 003 Note"). A true and correct copy of the Schedule 003 Note was attached to the Complaint as Exhibit C and the Motion as Exhibit 6.

**Schedule 003 Collateral.**

To secure Truck Dynasty's repayment obligations existing pursuant to the Schedule 003 Note, Truck Dynasty granted Volvo Financial a purchase money security interest in the Schedule 003 Tractor Unit, together with all parts, accessories, attachments, substitutions, repairs, improvements, replacements and all proceeds thereof (collectively, the "Schedule 003 Collateral").

The purchase money security interest in the Schedule 003 Tractor Unit is perfected via first lienholder notation found on that certain State of Mississippi motor vehicle *Certificate of Title* number MS0875538688 (the "Schedule 003 Title Certificate"). A true and correct copy of the Schedule 003 Title Certificate was attached to the Motion as Exhibit 7.

**C.      Schedule 004 Transaction.**

On or about March 30, 2023, Truck Dynasty purchased two (2) year-model 2023 Volvo VNL64T760 tractor units, VINs 4V4NC9EJXPN620892 and 4V4NC9EJ1PN620893 (collectively, the "Schedule 004 Tractor Units" from M & K Truck Center (the "Schedule 004 Transaction"). Attached to the Motion as Exhibit 8 were collectively, each of the *Equipment Purchase Agreements* (the "Schedule 004 Equipment Purchase Agreements"), reflecting Truck Dynasty's purchase of the Schedule 004 Tractor Units from M & K Truck Center, with same reflecting both of the tractors as being "new" units at the time of sale.

The Schedule 004 Transaction is evidenced by that certain *Master Loan and Security Agreement*, dated as of March 30, 2023, executed by and between Truck Dynasty and Volvo Financial (the "Master Loan Agreement"). A true and correct copy of the Master Loan Agreement was attached to the Motion as Exhibit 9. Financing for the Schedule 004 Transaction is evidenced by that certain *Promissory Note (Secured) and Schedule* (the "Schedule 004 Note"). A true and correct copy of the Schedule 004 Note was attached to the Motion for Summary Judgment as Exhibit 10. The Schedule 004 Note is made in connection with the Master Loan Agreement and incorporates the terms and conditions of same by reference.

**Schedule 004 Collateral.**

To secure Truck Dynasty's repayment obligations existing pursuant to the Schedule 004 Note, Truck Dynasty granted Volvo Financial a purchase money security interest in the Schedule 004 Tractor Units, together with all parts, accessories, attachments, substitutions, repairs, improvements, replacements and all proceeds thereof (collectively, the "Schedule 004 Collateral"). The purchase money security interests in the Schedule 004 Tractor Units are perfected via first lienholder notations found on those certain State of Mississippi motor vehicle *Certificates of Title* numbers MS0436787456 and MS1778964736 (collectively, the "Schedule 004 Title Certificates"). True and correct copies of the Schedule 004 Title Certificates were attached, collectively, to the Motion for Summary Judgment as Exhibit 11.

**D.      Schedule 005 Transaction.**

On or about April 13, 2023, Truck Dynasty purchased one (1) year-model 2024 Volvo VNL64T760 tractor unit, VIN 4V4NC9EJ9RN623799 (the "Schedule 005 Tractor Unit") from the Seller (the "Schedule 005 Transaction" and together with the Schedule 002 Transaction, the Schedule 003 Transaction, and the Schedule 004 Transaction, collectively, the "Finance

Transactions"). Attached to the Motion for Summary Judgment as Exhibit 12 was the *Equipment Purchase Agreement* (the "Schedule 5 Equipment Purchase Agreement"), reflecting Truck Dynasty's purchase of the Schedule 005 Tractor Unit from M & K Truck Center, with same reflecting the tractor as being a "new" unit at the time of sale.

Financing for the Schedule 005 Transaction is evidenced by that certain *Promissory Note (Secured) and Schedule* (the "Schedule 005 Note"). A true and correct copy of the Schedule 005 Note was attached to the Motion for Summary Judgment as Exhibit 13. The Schedule 005 Note is made in connection with the Master Loan Agreement and incorporates the terms and conditions of same by reference.

The Schedule 005 Note, together with the Schedule 002 Sales Contract, the Schedule 003 Note and the Schedule 004 Note are referred to herein, collectively, as the "Finance Agreements").

**Schedule 005 Collateral.**

To secure Truck Dynasty's repayment obligations existing pursuant to the Schedule 005 Note, Truck Dynasty granted Volvo Financial a purchase money security interest in the Schedule 005 Tractor Unit, together with all parts, accessories, attachments, substitutions, repairs, improvements, replacements, and all proceeds thereof (collectively, the "Schedule 005 Collateral" and together with the Schedule 002 Collateral, the Schedule 003 Collateral, and the Schedule 004 Collateral, collectively, the "Collateral").

The purchase money security interest in the Schedule 005 Tractor Unit is perfected via first lienholder notations found on those certain State of Mississippi motor vehicle *Certificate of Title* number MS1099512064 (the "Schedule 005 Title Certificate" and together with the Schedule 002 Title Certificate, the Schedule 003 Title Certificate, and the Schedule 004 Title Certificate,

collectively, the "Title Certificates". A true and correct copy of the Schedule 005 Title Certificate was attached to the Motion for Summary Judgment as Exhibit 14.

**E.     Continuing Guaranty.**

The Finance Agreements are further secured by that certain *Continuing Guaranty*, dated November 1, 2022 (the "Guaranty"), executed by the Defendants, Brad Little and Karl Little (collectively, the "Guarantors"), whereby Guarantors have guaranteed full, prompt, and complete payment and performance of all obligations that shall at any time be due and payable by Truck Dynasty pursuant to the Finance Agreements.  A true and correct copy of the Guaranty was attached to the Motion for Summary Judgment as Exhibit 15 and Exhibit I to the Complaint.

The Finance Agreements, the Title Certificates, the Guaranty, the Equipment Purchase Agreements and all other documents, instruments and agreements evidencing, securing and/or relating to the obligations owed by Truck Dynasty and Defendants on account of the Finance Transactions are referred to herein, collectively, as the "Finance Documents".

**F.  Existing Defaults and Unpaid Obligations.**

The sworn allegations of the Verified Complaint detail the failure of Truck Dynasty and the Defendant guarantors to pay to Volvo Financial all obligations due and owing pursuant to the Finance Documents (collectively, the "Finance Obligations").   (Verified Complaint [Dkt. #1], at ¶¶ 38-49).

And, by way of update, the unpaid and outstanding Truck Dynasty obligations existing pursuant to the Finance Documents as of August 26, 2024, was reflected in the *Affidavit of Tammie M. Lewis* (the "Volvo Financial Affidavit") attached as Exhibit 16 to the Plaintiff's Motion for Summary Judgment.

9

The Volvo Financial Affidavit, reflects that Truck Dynasty has failed to make all payments due and owing to Volvo Financial as required under the Finance Documents, including but not limited to the failure of Truck Dynasty to tender monetary payments due in the months of May through December of 2023 and January through August of 2024. (Exhibit 16 to [Dkt. #19] at ¶9). The last payment received by Volvo Financial on account of the Truck Dynasty obligations owed pursuant to the Finance Documents was on April 20, 2023. (Exhibit 16 to [Dkt. #19] at ¶10). As detailed in the Volvo Financial Affidavit, as of August 22, 2024, the total of all outstanding obligations owed to Volvo Financial by Truck Dynasty was $283,410.94 (the "Current Indebtedness"). (Exhibit 16 to [Dkt. #19] at ¶12).

As earlier noted, Volvo Financial asserts this Current Indebtedness reflects Truck Dynasty having received full credit for the net sale proceeds realized as a result of Volvo Financials' disposal of the Collateral tractor units pursuant to its rights as a secured party under the Uniform Commercial Code, with such disposition resulting in (net of expenses) $838,630.75 in sale proceeds. Accordingly, the $283,410.94 amount that Volvo Financial seeks to be awarded in this action reflects Truck Dynasty and the Defendants having received full credit for the net sale proceeds of the Collateral, with such net sale proceeds having reduced the outstanding obligations by $838,630.75.

### DEFENDANTS' ANSWER TO THE COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As referenced, in Defendants' answer to the Complaint, they do not deny non-payment of the involved financing transactions. Indeed, they assert generally that the financial decisions made by them regarding non-payment were ground in a "responsible and strategic approach" to work out of a bad financial situation resulting in Truck Dynasty filing a Chapter 11 bankruptcy

that was ultimately dismissed as described above. Instead, the majority of their answer to the complaint concerns their contention that Volvo Financial, though not the manufacturer, dealer or seller of the 6 tractor units purchased by Truck Dynasty, Inc.), is, nevertheless, not entitled to recover on the Guaranty because the acquired trucks were allegedly defective in some respect(s). This, they contend, interfered with Truck Dynasty's business operations, and hence, its ability to pay debts. And, while Defendants' Answer includes the assertion that the responsibility for the alleged truck defects which, they contend, led to financial losses and the subsequent bankruptcy filing of Truck Dynasty "lies squarely with the manufacturer and suppliers of the tractor units," they nevertheless assert that holding them personally liable on the Guaranty to Plaintiff (neither the manufacturer or seller) would "deflect attention from the true culprits: the entities responsible for the defective products." *See* [Dkt. #9] at 3.

For the most part, Defendants' response to Plaintiff's motion for summary judgment restates the position it asserted in its Answer. That is, Defendants contend the trucks purchased were defectively manufactured, albeit by a legal entity not party to this action, and sold to Truck Dynasty (not them) by another legal entity (the dealer), also not party to this action. Based on these assertions, Defendants contend they should be relieved of liability under the Guaranty. Defendants cite no legal authority in support of the same, relying instead, it appears, on reference to potential novel applications of recognized legal theories, such as "piercing the corporate veil." Pursuant to this theory, Defendants suggest that the separate corporate identity of Truck Dynasty should be disregarded and its owners, Defendants here, should be deemed "sufficiently intertwined" to have standing to assert a defective products claim against the manufacturer of the trucks purchased by Truck Dynasty, and thereby ultimately relieve themselves from individual liability to Volvo Financial on the personal Guaranty.

11

No legal authority for this novel application of the unpled doctrine of piercing the corporate veil (historically recognized to impose individual liability *on* a corporation's shareholders for wrongdoing by the corporation under exceptional circumstances) so as to, instead, endow them with heretofore unrecognized legal rights, is provided. As the Supreme Court of North Carolina has recognized, "Piercing the corporate veil 'is a strong step: Like lightning, it is rare and severe.'" *Harris v. Ten Oaks Mgmt., LLC*, No. 21 CVS 13907, 2022 WL 2198888, at *4 (N.C. Super. June 20, 2022), citing *Ridgeway Brands*, 666 S.E.2d 107, 112 (N.C. 2008); *see also Gray v. Edgewater Landing, Inc.*, 541 So.2d 1044, 1046 (Miss. 1989) ("Veil piercing is an extraordinary measure used only "for factual circumstances which are clearly extraordinary.").

Additionally, Defendants offer a suggested theory to the effect that Volvo Financial is precluded from collecting from them on the Guaranty because Volvo Financial, in providing financing to Truck Dynasty to purchase of the six tractors, which it asserts were at least in part defective and delivered late, constitutes a situation involving "fraud, misrepresentations, or latent defects" relieving them from liability under the Guaranty. *See* [Dkt. #22] at 3. Again, no actual legal authority is asserted to support this argument, only general assertions such as doing otherwise would be "unjust."

Defendants also assert generally that the Plaintiff's demand for $283,410.94 (inclusive of attorney fees, cost and default interest) is "excessive and not properly supported by the underlying financing documents…and are subject to further negotiations or adjustments." [Dkt. #22] at 3. And finally, Defendants assert speculatively that "a closer examination of the facts will reveal potential liability for Volvo Financial based on its role as a financier, [whose] duty was to ensure

the quality of the products it financed." [Dkt. #22] at 5. No legal authority or facts to support this proposition are offered.[4]

## LAW AND ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate where the "movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the initial burden of identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

Once the movant meets this initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party must present "significant probative evidence." *Hamilton*, 232 F.3d at 477. Mere "conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Celotex Corp.*, at 477 U.S. at 323.

---

[4] Seemingly as an afterthought, and though the deadline for amendments as well as discovery have long since passed with no motion ever having been filed seeking the same, Defendants close with the suggestion that "Plaintiffs [sic] argument that Volvo Financial cannot be held responsible because Volvo Trucks and the dealership M and K are not parties to the case can be cured by amending the pleadings or by the court exploring alternative avenues for bringing those parties into the litigation even if the deadline for adding parties has passed, if new evidence will come to light that implicate Volvo Trucks and M and K dealership, moreover if Volvo Financial had knowledge of the defects and failed to act on this information or failed to disclose it to Truck Dynasty or its Officers thus showing that they were negligent or breach of duty." [Dkt. #22] at 5.

**B.  DEFENDANTS' PRO SE STATUS**

The court is mindful intaking up this motion for summary judgment that Defendants are proceeding without counsel. Courts are required to give a *pro se* litigant's contentions a liberal construction. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing *Estelle v. Gamble*, 97 S. Ct. 285, 292 (1976)); *see also Haines v. Kerner*, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a *pro se* complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, a *pro se* litigant is not excused from meeting his burden of proof by specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. *See Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

The court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indemnity Company of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks and citation omitted). The Fifth Circuit has held that "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

**C.  BREACH OF CONTRACT (GUARANTY)**

As described above, in this action, Volvo  Financial  asserts breach of contract claims against the Defendants, with such claims being premised on Defendants' failure to pay the monetary amounts due and owing by them on the Guaranty they made to pay the indebtedness of Truck Dynasty in order to enable Truck Dynasty to secure the financing it needed to make the subject truck purchases. Under North Carolina law,[5] to establish a breach of contract claim,

---

[5] The Finance Documents are governed and controlled by North Carolina law.  (Exhibits 1, 6, 9, 10, 13 and 15 to [Dkt. #19]).

Defendants must show (1) there is a valid, enforceable contract; and 2) breach of that contract. *Poor v. Hill*, 530 S.E.2d 838, 843 (2000); *Bank of America, N.A. v. Rice, et al*, 780 S.E.2d 873, 881 (N.C. App. 2015) (holding summary judgment in favor of lender appropriate where no genuine issue of material fact to existed as to promissory note being 1) valid and enforceable and 2) that borrower breached contract in failing to tender payments due pursuant to note).

In the instant case, the Guaranty recites that each Defendant is jointly and severally liable to Volvo Financial for payment of all obligations owed by Truck Dynasty to Volvo Financial. Specifically, the Guaranty (Exhibit 15 to [Dkt. #19]) details the Defendants' liability as follows:

**VOLVO FINANCIAL SERVICES**

**Continuing Guaranty**

Customer No. _7783201_

· Pursuant to this Guaranty ("**Guaranty**") and for valuable consideration, each of the undersigned (each a "**Guarantor**"), jointly and severally, under seal, absolutely, unconditionally and irrevocably guarantees to Volvo Financial Services, a division of VFS US LLC, and its affiliates and subsidiaries (each individually, together with its successors and assigns, a "**Creditor**") the full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to the Creditor, from Truck Dynasty Transportation Incorporated ("**Debtor**"), whether now owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that Debtor has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of Debtor (collectively the "**Obligations**").

The Guaranty was executed by each of the Defendants, as follows:

| Signature of Guarantor: | | Signature of Guarantor: | |
|---|---|---|---|
| X _(signature)_ | SEAL | X _(signature)_ | SEAL |
| Print Name: **BRADLEY LITTLE** | | Print Name: **KARL LITTLE** | |
| Title: NA | | Title: NA | |
| Address: 9957 PLANTATION RIDGE DR, OLIVE BRANCH, MS 38654 | | Address: 11926 WISCONSIN, DETROIT, MI 48204 | |
| Date: 11/1/2022 | | Date: 11/1/2022 | |
| Email Address: | | Email Address: | |

In addition to being jointly and severally liable for the payment of all obligations[6] owed by Truck Dynasty to Volvo Financial, the Guaranty requires Defendants to pay all costs, expenses and reasonable attorneys' fees and expenses incurred by Volvo Financial in enforcing the Guaranty. (Exhibit 15 to [Dkt. #19] at 2). In relevant part it reads:

---

[6] It is uncontested that the Finance Agreement obligations owed by Truck Dynasty to Volvo Financial include Volvo Financials' attorneys' fees, expenses and costs of collection and enforcement, per contractual fee-shifting provisions found in numerous of the Finance Documents.

15

U.S. laws. In the event of any dispute regarding this Guaranty, Guarantor agrees to pay all costs and expenses of the Creditor (including reasonable attorneys' fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated. Guarantor acknowledges that this Guaranty is a "business contract" as that term is used under N.C.G.S. § 6-21.6 or any successor thereto.

Per the sworn allegations of the Verified Compliant and conceded by Defendants in their Answer, either by direct admission or failure to deny,[7] Truck Dynasty failed to pay to Volvo Financial all obligations due and owing pursuant to the Finance Documents. (Verified Complaint [Dkt. #1], at ¶¶ 38-49). And as to Defendants having executed the Guaranty, such is alleged to be fact by the sworn allegations in the Verified Complaint. (Verified Complaint [Dkt. #1], at ¶¶ 33, 43). Further, the Verified Complaint affirmatively alleges the Guaranty to constitute "a valid and binding contract" between Defendants and Volvo Financial. (Verified Complaint [Dkt. #1], at ¶44), and nowhere in the Defendants' Answer [Dkt. #9] is there any denial of these sworn allegations.[8] Nor is it contested that Volvo Financial is the owner, holder and beneficiary of the Guaranty with standing to enforce the Guaranty.

It is similarly uncontested that the Volvo Financial Affidavit submitted in support of Volvo Financials' motion reflects that Defendants have failed and refused to pay Volvo Financial the Finance Obligations due and owing pursuant to the Finance Documents so that, as of August 22, 2024, the outstanding obligations still owed totaled $283,410.94. (Exhibit 16 to [Dkt. #19] at ¶12).[9]

---

[7] P ursuant to North Carolina law, the effect of a defendant's failure to answer "is to admit the averments in the complaint." *Whitaker v. Whitaker*, 192 S.E.2d 80, 81 (N.C. Ct. App. 1972).

[8] According to Plaintiff in its memorandum in support of the instant motion, and not challenged by Defendants in their response, the Defendants' reference to an "invalid agreement" in Paragraph 13 of their Answer [Dkt. #9] is an apparent reference to the *Agreed Order Resolving Stay Relief; Granting Adequate Protection; Confirming Plan Treatment; and Affording Related Relief to Volvo Financial Services* [Bkr. Dkt. #102] (the "Adequate Protection Order"), as was executed on behalf of Truck Dynasty by its bankruptcy counsel, Toni Campbell Parker, Esq., in the Truck Dynasty Bankruptcy Case. In fact, all of Defendants' statements under Section IV "Breach of Contract Continuing Guaranty" found at Paragraphs 12-15 of their Answer [Dkt. #9] appear to be in reference to matters allegedly transpiring in the now-dismissed Truck Dynasty Bankruptcy Case. As such, Plaintiff asserts, and Defendants offer no articulable rationale otherwise, that such matters have no apparent relevance to the Guaranty obligations at issue in this litigation.

[9] Of note, Defendants do suggest in their opposition to Plaintiff's motion that the amount sued for is "excessive" or "not properly supported", but they do not allege any fact or even an explanation in support thereof so as to create a genuine issue of material fact as the veracity of the amount of the detailed indebtedness set forth in the sworn affidavit.

16

In fact, as to Defendants having not paid Volvo Financial, in their Answer [Dkt. #9], the Defendants admit that they made the "decision not to pay Volvo" and that they "refrained from making payments" owed to Volvo Financial. (Answer [Dkt. #9], at ¶¶3-4). Defendants characterize the decision not to pay Volvo Financial as a "strategic move" based on purported "guidance of legal counsel". (Answer [Dkt. #9], at ¶¶3-4). As such, I find, as Plaintiff asserts, that pursuant to North Carolina law, the existence of these undisputed facts entitles Volvo Financial to entry of summary judgment as to the Defendants for breach of the Guaranty that they executed in favor of Volvo Financial. *Bank of Am., N.A. v. Rice*, 780 S.E.2d 873, 881 (N.C. Ct. App. 2015) (remanding with mandate for entry of summary judgment in favor of lender, based on absence of any genuine issue of material fact as to borrower having defaulted under promissory note contracts).

In sum, the foregoing admitted facts and law mandate entry of summary judgment in favor of Volvo Financial as against each of the Defendants, jointly and severally, as to all amounts due and owing pursuant to the Financing Agreements.

As concerns Defendants' suggestion (*see supra* n.3) that they might be able to amend their answer to now assert claims of defect against to be newly-added third-party defendants, the truck manufacturer or dealer/seller, I find the same to be without any merit for at least the reason that it is undisputed that the manufacturer, the dealer/seller, and the purchaser of the trucks, Truck Dynasty, are separate legal entities and the defendants, who are merely shareholders of Truck Dynasty, have, as a matter of law, no right to bring actions in their individual capacities to enforce causes of action accruing to the corporation for defective manufacture of equipment purchased by the corporate entity. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658 (1997) (establishing *Barger Rule* "that corporate

---

On the contrary, Defendants rely instead on meaningless contentions such as "*if t*here is ambiguity in the finance documents regarding the calculation of default interest, cost or fees are grounds for reducing the amount sought and thus subject to further negotiations or adjustments." [Dkt. #22] at 3 (emphasis added).

shareholders cannot bring action in their individual capacities to enforce causes of action accruing to the corporation.") Stated differently, Defendants lack standing to assert such claims because Defendants fail to establish the essential elements required for Article III standing, namely a redressable injury-in-fact to them, caused by a defendant and "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-560 (1992). (citations and quotations omitted). As noted, *supra*, any injury suffered here on account of defective manufacture was suffered by Truck Dynasty (in the form of receipt of allegedly "defective" trucks) and not by Defendants individually.

Finally, even if this Court were to find that Defendants could have individual standing to assert the aforementioned equipment "defect" claims, such claims fail as a matter of law because of contractual waivers and other stipulations found in various of the Finance Documents.[10]

In particular, as concerns the tractor units alleged to be defective, included within the Schedule 002 Sales Contract (Exhibit 1 to [Dkt. #19] at 2) is an "Assignment and Waiver of Defenses" provision. At sub-section (d) of this provision, Truck Dynasty (as the "Buyer") stipulated and agreed that: "Buyer will not assert any claims or defenses Buyer may have against Seller or any other party and will settle all claims, defenses, set-offs, and counterclaims it may have against Seller or the manufacturer of the Equipment (the "Manufacturer"), including but not limited to ***defects in the Equipment, directly and solely with Seller or the Manufacturer***." (Exhibit 1 to [Dkt. #19] at 2) (emphasis added). The Schedule 002 Sales Contract also has a "No Warranties" representation and covenant made by Truck Dynasty

---

[10] The Court acknowledges that there may be a scenario whereby an unrepresented party submits unsworn testimony in support of their response to a summary judgment motion, which necessitates the Court to provide them with an opportunity through additional briefing to submit evidence that greats a genuine dispute of material fact as to one or more of their claims. *See Kumar v. Panera Bread Co.*, 2024 WL 4281018, at *6 (S.D. Tex. Sept. 24, 2024). However, here the distinction is that neither of the Littles articulate any sworn or unsworn fact or evidence in support of their claim that Volvo Financial is responsible for manufacturer defects. At most, they "surmise" that if they sued the manufacturer (or others) that they might gather some evidence of something. Just what that "something" might be is left to conjecture, and such does not defeat summary judgment.

(as the "Buyer"), which included that **"THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN THOSE MADE BY THE MANUFACTURER OF THE COLLATERAL.** Buyer acknowledges that it is not relying on any representations from Seller (or any other party) relating to financing made under this Contract." Exhibit 1 to [Dkt. #19] at 2.

Under North Carolina law, such "waiver of defenses" and "no warranties" clauses are enforceable. *ITT-Industrial Credit Co. v. Milo Concrete Co*., 229 S.E.2d 814, 817-18 (N.C. App. 1976) (holding that "waiver of defenses" contract provision is valid in "commercial setting" and, operating in conjunction with North Carolina statute, effected waiver of all of commercial equipment purchaser's defenses including breach of warranty).

Included within the Schedule 003 Finance documents are: Section 1(b) "Truck Dynasty (as the "Borrower") is contractually obligated to tender payments to Volvo Financial notwithstanding any counterclaims or defenses it may hold. Thus, the existence of defenses based on allegedly defective equipment do not provide an excuse for non-payment of the obligations owed to Volvo Financial (and, likewise, does not shield Defendants – as guarantors of the Volvo Financial indebtedness – from their payment obligations).

The Master Loan Agreement utilized in the Schedule 004 Transaction also stipulates (Exhibit 9 to [Dkt. #19] at §4(e)). that the Borrower is required to maintain the equipment.

Thus, it was Truck Dynasty's obligation to provide all repairs needed to maintain in "good operating condition" the tractor unit at issue (which was in "new" condition when sold to Truck Dynasty). The Defendant's allegations do not assert the alleged "defects" to be items outside the scope of Truck Dynasty's contractual duty to maintain the tractor unit in "good operating condition."

The Master Loan Agreement (Exhibit 9, at §5) utilized in the Schedule 004 Transaction also stipulates that the Borrower (i.e. Truck Dynasty) at all times bears all risk of loss or damage to the tractor unit and the Defendant's allegations do not assert the alleged "defects" to be items damage that are outside the scope of the risk of loss, damage or destruction of the tractor units that Truck Dynasty contractually assumed at Section 5 of the Master Loan Agreement (Exhibit 9).

The Master Loan Agreement stipulations and agreements by Truck Dynasty (as Borrower) also includes a Section 13 "Liability of Lender" waiver, which provides that:

Lender shall not in any way be liable for the condition or maintenance of the Collateral or any failure to do any or all of the actions for which rights and authority are granted in the Loan Documents. The failure of Lender to take any of the actions or exercise any of the rights, interests, powers, or authority granted to Lender under the Loan Documents shall not be construed to be a waiver of any of the rights, interests, powers, or authority granted to Lender under the Loan Documents. In exercise of its rights and remedies, Lender shall not have any liability to Borrower for any injury or loss to the Collateral, other assets., business, or operations of Borrower or any other liability, other than for Lender's own gross negligence or willful misconducts, and if relating to Collateral, while it is in Lender's possession. Exhibit 9 to [Dkt. #19] at 4.

In other words, stipulating and covenanting that "Lender shall not in any way be liable for the condition or maintenance of the Collateral . . ." the Borrower (Truck Dynasty) has contractually waived the "defect" claims for which Defendants now seek recovery.

Lastly, the Schedule 004 Note (Exhibit 10 to [Dkt. #19] at 3) contains "Delivery and Acceptance" representations and warranties made by Truck Dynasty (as "Borrower") in connection with the delivery on March 30, 2023, to Truck Dynasty of the same equipment as

Defendants now contend was "defective." As contemporaneously attested to by the Defendant, Karl Little:

> Borrower represents to Lender that on the Delivery Date set forth above Borrower: accepted delivery of and inspected each item of Equipment; determined that each item of Equipment contains all of the major components and accessories as agreed; each item of Equipment is in good working order and condition; and that each item of Equipment is fit for immediate and continued use and conforms to Borrower's requirements without exception.

The Schedule 004 Note is signed by Karl Little as "Owner/Pres" of Truck Dynasty Transportation Incorporated. Exhibit 10 to [Dkt. #19] at 3.

The Finance Documents utilized by Volvo Financial for the Schedule 005 Transaction are identical forms to the Schedule 004 Transaction documents analyzed.

In short, the foregoing stipulations, warranties and waivers found in the Transaction documents further warrant summary judgment in favor of Volvo Financial as to all claims, if any, asserted by Defendants alleging "defects" the subject tractor units.

## <u>CONCLUSION</u>

Though the Court is not unsympathetic to what, in essence, are equitable arguments no doubt genuinely pled by Defendants who are proceeding without the benefit of legal counsel, the Court is nevertheless obligated in the interest of all those engaged in business of commercial transactions and their financing, to foster, to the extent feasible, predictability in the same by enforcing the announced legal principles applicable to the terms thereof, absent an established rule of law permitting otherwise. Accordingly, I find Volvo Financial is entitled to entry of a Final Judgment against Defendants, jointly and severally, in an amount of not less than $283,410.94 (the "Judgment Amount"), representing the amounts currently due and owing pursuant to the Finance Documents, the payment of which Defendants personally guaranteed pursuant to the Guaranty,

with said Judgment Amount including all attorneys' fees, costs and expenses reasonably incurred by Volvo Financial (as of August 22, 2024), in enforcing and collecting Defendant's obligations owed to Volvo Financial pursuant to the fee-shifting provisions found in the Finance Documents, and with said Judgment Amount to accrue at the contract rate default interest (18.00% *per annum*) from and after the date of entry of a final judgment in favor of Volvo Financial until such time as said final judgment has been satisfied in full.

Additionally, Volvo Financial is entitled to entry of a final judgment in its favor, dismissing with prejudice all claims, causes of action, or other request for relief of any nature as addressed by the Court herein as having been asserted by Defendants against Volvo Financial in Defendant's Answer [Dkt. #9], including but not limited to dismissing with prejudice all claims regarding alleged "defects" in the tractor units at issue in this litigation.

**SO ORDERED**, this the 15th day of October, 2024.

/s/ Jane M. Virden

**UNITED STATES MAGISTRATE JUDGE**